REQUESTED BY: Senator Chris Beutler Nebraska State Legislature State Capitol Lincoln, Nebraska 68509
Dear Senator Beutler:
You have requested an opinion from this office in connection with possible constitutional problems inherent in LB 321. The same is hereinafter discussed.
LB 321 is also known and cited as the Nebraska Educational Facilities Authority Act. If it were to become operative law, LB 321 would create a body politic to be known as the Nebraska Educational Facilities Authority (hereinafter, `Authority'). The Authority, which would consist of five members to be appointed by the Governor for a specific term, would be constituted a public instrumentality and the exercise by the Authority of the powers conferred by this legislative bill would be deemed and held to be the performance of an essential public function of the state. Section 10 of LB 321.
The stated purpose of the Authority is to assist private institutions of higher education in constructing, financing, and refinancing of `projects.' Section 18 of LB 321. The word `project' is a word of art and would unduly extend the length of this opinion to quote it verbatim. In general, the word `project' can be cursorily defined as any property constructed or acquired before or after the effective date of LB 321 that may be used or will be used in connection with the operation of a private institution of higher education. Section 5 of LB 321. To assist it in carrying out its stated purpose, the Authority would be authorized to make loans and to issue bonds for the purpose of paying, refinancing, or reimbursing all or any part of the cost of a `project.' Sections 24, 30, and 38 of LB 321. In connection therewith, section 44 of LB 321 specifically provides that bonds issued pursuant to this legislative bill shall not be deemed to constitute a debt of the state or any political subdivision thereof or a pledge of the faith and credit of the state or of any political subdivision. The Authority would also be authorized to acquire property, real or personal, and to take title thereto in the name of the Authority or in the name of a private institution of higher education as its agent.
It can hardly be doubted that the effect of LB 321 is to give private institutions of higher education substantial benefits through the offices of the Authority, a state agency. For example, section 38 of LB 321 provides `Neither the members of the authority nor any person executing the bonds shall be liable personally on the bonds or to be subject to any personal liability or accountability by reason of the issuance thereof.' There are other benefits to private institutions of higher education. Section 51 of LB 321 provides that the State of Nebraska agrees with the holders of any obligations issued under this legislative bill that `the state will not limit or alter the rights hereby vested in the authority until such obligations, together with the interest thereon, are fully met and discharged.'
In State ex rel. Beck v. City of York, 164 Neb. 223,82 N.W.2d 269 (1957), the court stated:
 The loan of its name by a city to bring about a benefit to a private project, even though general liability does not exist, is nothing short of a loan of its credit. The use of the city as the payer of the bonds is intended to give respectability to them because of the general acceptability of cities as a source of bond issues in financial markets. It is a loan of the credit of the city within the meaning of the constitutional prohibition.
It would seem, by analogy, that the loan of the name of a state agency, the Authority, to issue and pay bonds pursuant to LB 321 is likewise a loan of the credit of the State of Nebraska and therefore is prohibited by section 3 of ArticleXIII, Constitution of Nebraska.
Many of the private institutions of higher education that would be brought under the umbrella of LB 321 are, of course, affiliated with a religious order. Thus there is a serious question as to whether LB 321 is in violation of the establishment clause, or perhaps even the free exercise clause of the First Amendment of the Constitution of the United States. Time simply will not permit an extended discussion, but certainly there is a serious question of excessive entanglement between the Authority and sectarian institutions. The concern over `excessive entanglement' has been that close association between the religious order and the state would lead to an impermissible emphasis upon religious doctrines and materials. See, for example, Lemonv. Kurtzman, 403 U.S. 602 (1971). Thus in issuing bonds or making loans or acquiring property for private institutions of higher education a court could find that it results in `excessive entanglement' which is detrimental to both the state and the religious order.
The above are just some of the constitutional problems inherent in LB 321. There are undoubtedly others, depending upon specific facts in a specific case.
Very truly yours, PAUL L. DOUGLAS Attorney General Harold Mosher Assistant Attorney General